Plaintiff, doing business under the trade name of Tolbert Welding Machine Company, in the City of Shreveport, Louisiana, instituted this suit against the defendant, H.D. Rodgers, a nonresident of Louisiana, for balance due on open account for work done and services rendered. The suit was filed the afternoon of September 21, 1942, and a writ of attachment sued out in connection therewith was levied about the hour of five o'clock of that day, by seizure of some machinery and water well drilling equipment in the City of Shreveport, part of which was at plaintiff's place of business, and part on the yard of the Caddo Pipe Supply Company. Defendant happened to be in the city at that time and personal service of process was had upon him. He made no appearance nor filed answer. Judgment by default was confirmed against him.
B.F. Edington, by intervention and third opposition, asserted ownership of that part of the attached chattels described as follows:
"1 — Gardener-Denver 90 cubic feet high pressure air compressor, Serial No. 67,628;
1 — 55 H.P. Catapillar power unit, Serial No. 4C7607 mounted on frame with belts and accessories."
He alleged that he acquired this property from Mrs. Margaret Rodgers, through her agent, H.D. Rodgers, on September 21, 1942, by private act of sale; that delivery thereof was made to and possession taken and exercised by him prior to and at time of levy of the attachment.
Answering the petition of intervention and third opposition, plaintiff charges that the asserted sale of said property from H.D. Rodgers unto Mrs. Margaret Rodgers and sale by her, through H.D. Rodgers, agent, unto Edington, are mere shams and simulations without any legal existence as sales, and were fraudulently conceived through collusion of the parties out of the desire and for the purpose of defeating and destroying plaintiff's rights against the said H.D. Rodgers; that the pretended sale to Edington was an afterthought and was entered into subsequent to the levy of the attachment; that no delivery of the property to Edington was made prior to issuance and levy of the writ, but was, in fact, continuously in the possession and under the dominion of Rodgers.
The aformentioned allegations tender the real issues of the case; others set up by plaintiff are of a secondary character and apparently are not now seriously urged.
There was judgment against the defendant for the amount for which sued with recognition and maintenance of the writ of attachment on all property seized thereunder except that claimed by Edington, and as to this he was decreed to be owner and the seizure thereof set aside. Plaintiff was cast for costs of the intervention and third opposition. She appealed.
If a decision in this case depended entirely upon the transactions of September 21, 1942, the date suit was filed and attachment levied, the bona fides of H.D. Rodgers and Mrs. Margaret Rodgers could well be questioned. Fortunately for them, their antecedent business relations absolve them from moral turpitude as regards the ownership of the embattled chattels and clears the title of intervenor thereto from any semblance of taint.
H.D. Rodgers is the brother-in-law of Mrs. Margaret Rodgers. She is much older than he. He and his wife stopped with her while in and about Shreveport. Since her husband's death, several years prior to the suit, she has engaged in oil and water well drilling in oil fields. H.D. Rodgers also followed this line of business. She financed his efforts to some extent by loans to him from time to time. His home was in Waskom, Texas, some twenty miles west of Shreveport. To January 21, 1939, his indebtedness to Mrs. Rodgers amounted to $2,000. On that date he executed to her his note therefor, due January 21, 1940, and secured the same by mortgage on quite a lot of machinery, etc., including that herein involved. The note and mortgage were executed in Harrison County, Texas, Rodgers' home, which was also the locus of the chattels. The note not having been paid in full, said property on April 24, 1942, was conveyed to Mrs. Rodgers in satisfaction thereof. At that time the property was on Rodgers' premises in *Page 792 
Waskom. The note was marked paid and inscription of the mortgage canceled. About this time Mrs. Rodgers decided to retire from the well drilling business. She wished to dispose of this and other equipment she owned; and on this date she gave authority in the form of a letter to Rodgers to dispose of all her "oil field equipment". She took such possession of the chattels at Waskom as well as could be done without actually, loading them on a large truck and transferring them elsewhere. They weighed between four and five tons. Thereafter, she authorized Rodgers to bring the property to Shreveport and sell it, feeling that the chances of advantageous sale there were more favorable than in Waskom. The transfer was made to the lot whereon the property was seized and had remained there some two months prior to the seizure.
Considerable stress is laid upon the fact that the sale to intervenor was consummated early in the morning of the day the suit was filed, and was reduced to writing the following day. Since the record clearly establishes title to the chattels in Mrs. Rodgers many months prior to the seizure, these questions have no real bearing upon the outcome of this controversy, but, in passing, we will say that they are satisfactorily explained. The sale was reduced to writing on suggestion of counsel. It was actually consummated the day before during business hours by intervenor issuing his check to Mrs. Rodgers for the cash portion of the purchase price and executing notes in her favor representing the deferred part of the price. These instruments were then and there delivered to Rodgers as her agent and were promptly placed in her possession. It is well here to add that after the agreement between intervenor and Rodgers had been reached and while they were in intervenor's office, Rodgers called Mrs. Rodgers on the telephone and imparted to her what he had done. His actions were instantly approved by her. In this connection it is well to say further that intervenor took possession of the chattels immediately after the sale to him so far as such could be done without actual removal thereof, and, in fact, did that day remove certain accessories to his own place of business and, without knowing the attachment had been levied thereon, removed the balance of the chattels to his place the following morning.
It is worthy of note that the mortgage by Rodgers to Mrs. Rodgers was executed at a time not suspicious. Surely no purpose to defraud plaintiff motivated the parties in this transaction. The balance due on account sued upon had not then come into existence.
Counsel for appellant concedes that the disposition of this case turns upon resolution of questions of fact. The learned trial judge disposed of these questions adversely to appellant's contentions. A thorough consideration of the record convinces us that the trial judge's ruling is abundantly supported by the testimony in the case and, accordingly, the judgment appealed from is affirmed at appellant's cost. *Page 891